# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2013-1311

## GENERAC POWER SYSTEMS, INC.,

*Plaintiff-Appellant,*

v.

## KOHLER COMPANY,

*Defendant-Appellee,*

and

## TOTAL ENERGY SYSTEMS, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the Eastern District of Wisconsin in case no. 11-CV-1120, Judge J.P. Stadtmueller presiding.

## BRIEF OF DEFENDANT-APPELLEE KOHLER COMPANY

Jonathan H. Margolies
Katherine W. Schill
Richard H. Marschall
Melanie J. Reichenberger
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, WI 53202
Telephone: (414) 271-6560
Facsimile: (414) 277-0656

*Attorneys for Defendant-Appellee Kohler Company*

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Generac Power Systems, Inc.      v. Kohler Company et al.

No. 2013-1311

## CERTIFICATE OF INTEREST

Counsel for the ~~(petitioner) (appellant) (respondent)~~ (appellee) ~~(amicus) (name of party)~~
Kohler Company _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Kohler Company

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

_____

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Jonathan H. Margolies, Katherine W. Schill, Richard H. Marschall, and Melanie J. Reichenberger, all of Michael Best & Friedrich LLP

_____

| April 22, 2013 | /s/ Jonathan H. Margolies |
|----------------|---------------------------|
| Date | Signature of counsel |
| | Jonathan H. Margolies |
| | Printed name of counsel |

Please Note: All questions must be answered
cc: H. Michael Hartmann _____

i

# TABLE OF CONTENTS

Certificate of Interest ........................................................................ i

Table of Authorities ....................................................................... iv

Statement of Related Cases ............................................................ vi

I.    Introduction ............................................................................ 1

II.   Counterstatement of Jurisdiction ............................................ 2

III.  Counterstatement of Issues ..................................................... 2

IV.  Counterstatement of the Case .................................................. 2

V.    Counterstatement of Facts ....................................................... 2

VI.  Summary of the Argument ..................................................... 14

VII.  Argument ................................................................................ 16

      A.    Standard of Review ........................................................ 16

      B.    The District Court's Denial of Generac's Motions for JMOL and a New Trial Must Be Affirmed Because Generac Did Not Make Sufficient Arguments in Its Opening Brief to Contest Those Rulings, and Has Waived the Right to Do So. ................... 18

      C.    The District Court Correctly Construed "Predetermined Operating Parameters." ........................................................ 21

           1.    Generac is bound by the claim construction it successfully argued for below. ................................... 21

           2.    The district court's construction on clarification was correct. . 24

      D.    Even If Generac's New Construction of "Predetermined Operating Parameters" on Appeal is Used, There is No Basis to Disturb the Jury's Verdicts or the District Court's Denial of Generac's Post-Trial Motions. ........................... 28

      E.    The Undisputed Evidence in the Summary Judgment Record Established That the Cummins-Onan PowerCommand System Anticipates Claim 19 Under Any Construction. ............................... 31

           1.    Every element of claim 19 was disclosed in the Cummins-Onan PowerCommand system. ................. 31

           2.    There is no reasonable dispute as to whether the Cummins-Onan PowerCommand system existed. ................... 35

      F.    The District Court Correctly Construed Of "At Least One." ............ 43

G.      The Summary Judgment Record Contained Independent Grounds
        for Affirming the District Court's Grant of Summary Judgment. ......46

H.      The Verdict of Anticipation of Claim 23 Requires a Finding of
        Anticipation of Claim 19 As a Matter of Law. ...................................53

VIII.  Conclusion ......................................................................................55

Certificate of Service ..............................................................................57

Certificate of Compliance with Fed. R. App. P. 32(a) ............................58

# TABLE OF AUTHORITIES

**Page(s)**

C‌ASES

*Accenture Global Servs. v. Guidewire Software, Inc.*,
 728 F.3d 1336 (Fed. Cir. 2013) ..............................................................20, 22, 54

*Adenta GmbH v. OrthoArm, Inc.*,
 501 F.3d 1364 (Fed. Cir. 2007) ...................................................................36, 40

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
 607 F.3d 817 (Fed. Cir. 2010) ............................................................................19

*AFG Indus. v. Cardinal IG Co.*,
 594 F. Supp. 2d 889 (E.D. Tenn. 2008)..............................................................54

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986).............................................................................................17

*Baker Hughes, Inc. v. Davis-Lynch, Inc.*,
 31 Fed. Appx. 650 (Fed. Cir. 2002)....................................................................36

*Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*,
 731 F.2d 831 (Fed. Cir. 1984) ............................................................................41

*CCS Fitness v. Brunswick Corp.*,
 288 F.3d 1359 (Fed. Cir. 2002) ..........................................................................25

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986).............................................................................................17

*Chamberlain Group, Inc. v. Skylink Techs., Inc.*,
 381 F.3d 1178 (Fed. Cir. 2004) ..........................................................................17

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
 460 F.3d 1349 (Fed. Cir. 2006) ..........................................................................23

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*,
 424 F.3d 1293 (Fed. Cir. 2005) ..........................................................................19

*Cybor Corp. v. FAS Techs., Inc.*,
 138 F.3d 1448 (Fed. Cir. 1998) (en banc) .........................................................16

*Ecolochem, Inc. v. Southern Cal. Edison Co.,*
227 F.3d 1361 (Fed. Cir. 2000) ........................................................47

*In re Innotron Diagnostics,*
800 F.2d 1077 (Fed. Cir. 1986) ........................................................54

*In re King,*
801 F.2d 1324 (Fed. Cir. 1986) ........................................................34

*Innogenetics, N.V. v. Abbott Labs.,*
512 F.3d 1363 (Fed. Cir. 2008) ........................................................18

*Kistler Instrumente AG v. United States,*
628 F.2d 1303, 211 U.S.P.Q. 920 (Ct. Cl. 1980)..............................43

*Mehl/Biophile Int'l Corp, et al. v. Sany Milgraum, M.D., et al.,*
192 F.3d 1362 (Fed. Cir. 1999) ........................................................46

*NPF Ltd. v. Smart Parts, Inc.,*
187 Fed. Appx. 973 (Fed. Cir. 2006)................................................17

*NTP, Inc. v. Research In Motion, Ltd.,*
418 F.3d 1282 (Fed. Cir. 2005) ........................................................26

*Ormco Corp. v. Align Tech., Inc.,*
498 F.3d 1307 (Fed. Cir. 2007) ........................................................54

*Rhine v. Casio, Inc.,*
183 F.3d 1342 (Fed. Cir. 1999) ........................................................44

*Taurus IP, LLC v. DaimlerChrysler Corp.,*
726 F.3d 1306 (Fed. Cir. 2013) ........................................................40

*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.,*
602 F.3d 1325 (Fed. Cir. 2010) ..................................................19, 31

*Woodland Trust v. Flowertree Nursery, Inc.,*
148 F.3d 1368 (Fed. Cir. 1998) ........................................................36

**STATUTES**

35 U.S.C. section 102(b)...................................................................34

# STATEMENT OF RELATED CASES

No appeal in or from the same civil action in the lower court was previously before this Court or any other appellate court.

## I.    INTRODUCTION

Appellant Generac Power Systems, Inc. ("Generac") asserted claims 19 and 23 of U.S. Patent No. 6,653,821 ("the '821 patent") against Appellees Kohler Company ("Kohler") and Total Energy Systems ("TES").  The district court found claim 19 invalid as a matter of law prior to trial.  A86.  After a five-day jury trial, the jury found claim 23 both invalid and not infringed, and the district court denied Generac's post-trial motion for judgment as a matter of law ("JMOL") or for a new trial.  A113.  Generac essentially ignores the trial verdicts and related evidence because a direct appeal from them would require examination of the numerous prior art references that the jury found to anticipate claim 23.  Claim 23 is narrower than claim 19, and any review of the evidence at trial would undermine Generac's arguments against the grant of summary judgment of invalidity regarding claim 19. Because Generac fails to develop any argument at all regarding the trial verdicts or the denials of its post-trial motions, the judgment on the verdicts and the denials should be affirmed.

Regarding claim 19, Generac primarily argues that the district court construed the "predetermined operating parameters" claim limitation too broadly. Generac has waived this argument, however, because the district court adopted Generac's own proffered construction.  The argument also lacks merit.  Generac next argues that the prior art relied on by the district court to invalidate claim 19

1

never existed.  Generac cannot create a genuine issue of fact on this issue because the record contained contemporaneous documents and unrebutted first-hand witness accounts of the prior art.  The summary judgment record also contains undisputed facts that other prior art anticipates the claims, including prior art found to anticipate claim 23 at trial.  The grant of summary judgment of invalidity should be affirmed.

## II.    COUNTERSTATEMENT OF JURISDICTION

Kohler does not disagree with the statement of jurisdiction by Generac.

## III.    COUNTERSTATEMENT OF ISSUES

Kohler does not disagree with Generac's Statement of the Issues.  Kohler notes, however, that Generac's Statement does not raise any issue related to the sufficiency of the evidence to support the jury's verdicts of non-infringement and invalidity of claim 23 of the '821 patent.  These verdicts stand unchallenged with respect to the underlying evidence.

## IV.    COUNTERSTATEMENT OF THE CASE

Kohler does not disagree with Generac's statement of the case.

## V.    COUNTERSTATEMENT OF FACTS

Much of Generac's factual statement is irrelevant to the issues on appeal and includes alleged details regarding Generac's system that are not found in the asserted claims, or in some cases even in the '821 patent.  Indeed, the '821 patent is not limited to "modular" systems, backup power systems that allow "paralleling"

among multiple generator sets, or systems that do not require "switchgear." The '821 patent never even mentions switchgear. During the summary judgment phase below, Generac grudgingly admitted as much: "The '821 patent actually made the new system and its functionality indifferent to whether additional switchgear was present." A7420 (Dkt. 93 at 4). The presence of custom switchgear in some Kohler accused devices forced Generac to take this position to preserve its infringement claim. The district court specifically concurred with Generac: "[R]egardless of whether a system includes switchgear, that system may infringe upon [or anticipate] Claim 19 or Claim 23." A64. Accordingly, Generac's description of the patented invention as departing "from the prior approaches of utilizing either a larger generator set or custom-programmed and -designed switchgear," Br. at 8, contradicts Generac's admission during summary judgment as well as the patent itself.

Claims 19 and 23 of the '821 patent cover a method of monitoring and controlling generator sets that are connected to a load and to a network. *See, e.g.,* A133 at Col. 14:43-53, A134 at Col. 15:6-Col. 16:8. As shown below, claim 19 recites three steps, and claim 23 includes the same three steps as claim 19 (though reciting "at least one generator set" rather than "a plurality of generator sets") plus two additional steps:

| Claim 19 | Claim 23 |
|---|---|
| A method of managing the distribution of electrical power, comprising the steps of: | A method of managing the distribution of electrical power, comprising the steps of: |
| interconnecting **a plurality** of generator sets to a load and to a network, each generator set having the ability to be started and stopped; | interconnecting **at least one** generator set to a load and to a network, each generator set having the ability to be started and stopped; |
| selecting each generator set and setting various predetermined operating parameters for each selected generator set; and | selecting a generator set and setting various predetermined operating parameters for the selected generator set; |
| transmitting the settings of the predetermined operating parameters over the network to each selected generator set. | transmitting the settings of the predetermined operating parameters over the network to the selected generator set; |
| | starting the selected generator set at a first predetermined time; and |
| | stopping the selected generator set at a second predetermined time. |

Because the district court held claim 19 invalid as a matter of law, the jury only addressed claim 23. The jury found that multiple prior art references anticipate claim 23: Encorp's Multiple Genset Paralleling System; Kohler's Decision Maker 340; Generac's Utility 50; and U.S. Patent No. 6,697,951 to Sinha *et al*. A10513 (Dkt. 171 at 3). As discussed more fully below, all of these references except the Utility 50 (which was limited to a single generator) would also anticipate claim 19 because they necessarily disclose the first three steps of claim 23.

The jury also found claim 23 obvious in light of the prior art, which included U.S. Patent No. 5,734,255 to Thompson et al. (A460-A499), the Cummins-Onan Power Command (A3658-A3677), and U.S. Patent No. 5,278,771 to Nyenya

4

(A297-A307). A10513 (Dkt. 171 at 3). Generac does not challenge the jury's verdicts of anticipation, obviousness, or non-infringement of claim 23 based on these references or the denial of its post-trial motions attacking those verdicts in various respects.

To give the Court some context regarding the scope of the prior art, Kohler will briefly describe the various prior art references found by the jury to invalidate claim 23.

**The Encorp Multiple Genset Paralleling System.** Encorp, Inc. of Windsor, Colorado began selling a suite of generator control, monitoring, and configuration equipment in the mid-1990s. A3026-A3059, A3099-A3179, A3180-A3199, A3208-A3258, A3260-A3306, A3308-A3562, A3564-A3610. The suite of products, including the Generator Power Control ("GPC") and *en*telligent software, allowed users to perform the method of managing the distribution of power recited in claims 19 and 23. *Id.*

The Encorp system interconnected generators to a load and network, satisfying the first limitation of claims 19 and 23. A3052-A3059. As shown in the drawing below, an Encorp multiple genset utility parallel system included up to eight generator sets (each including a generator, engine, engine control & monitor, and communications link). A3039 (citing A458). Each generator set is interconnected to the same load (shown in the upper left corner) and the same

network (MODBUS RTU or LonWorks).  *Id.*  Each generator set (like all generator

sets) is able to start and stop.



*Id.*

At least as early as 1999, the Encorp system allowed a user to select each of

multiple generator sets, set predetermined operating parameters for each selected

generator set, and transmit the settings over a network to the selected generator set.

A2714-A2716, A3046-A3054, A3099-A3179, A3180-A3199, A3260-A3306,

A3308-A3562, A3564-A3610, A3679-A3730.  The screen shot below illustrates

the synchronizer control setting.  A user chooses a generator set from a drop-down

menu in the upper left hand corner of the screen shot ("Node"), and sets the

synchronizing parameters:



A3260-A3306 at A3297. The "Send New Configuration Variables" button permits the settings to be sent over a network. *Id.* Similarly, the user can select a generator set and input settings for load sharing, then transmit the settings over a network by clicking the Send New Configuration Variables button. *Id.*

The Encorp system discloses the "interconnecting," "selecting," and "transmitting" steps of claims 19 and 23. The Encorp system also discloses the starting and stopping limitations found in claim 23. The Encorp system permits a user to select a generator set and set a schedule for starting and stopping that set, then transmit the settings by clicking the "apply" button in the interactive settings screen shown below:

7



A3049-A3050, A3292.

**Kohler's Decision Maker 340.** Before Generac filed the application that issued as the '821 patent, Kohler made and sold a generator power controller called the Decision Maker 340. A317-A386, A387-A456, A500-A505, A506-A565, A566-A625, A626-A685, A11563, A11564. The 340 controller "sits on top of the generator to perform generator control function and generator monitoring functionality." A9905 at 537:23-25. Up to 128 generator sets, each with a 340 controller, could be connected to a load and also connected to a network via modem or cable. A9909 at 541:7 – A9911 at 543:11. For example, the image below discloses communication through a modem.



**Remote Area Network**

A504.

At trial, Kohler provided a live demonstration of the Decision Maker 340 by

its witness, Michael Pincus. A9905 at 537:16 – A9929 at 561:2. The jury

witnessed Mr. Pincus use a computer to remotely (via a network) select each of

two generator sets, set predetermined operating parameters, such as load sharing

and run time, for selected generator sets, and transmit those settings to the selected

generator set. A9911 at 543:12 – A9916 at 548:15. Among the parameter settings

selected and transmitted were start and stop times. A9913 at 545:23 – A9914 at

546:9.

**Sinha**.  U.S. Patent No. 6,697,951 ("Sinha") relates to a distributed electrical power management system for selecting remote or local power generators.  A1539-A1548.  Sinha discloses "[a] method of managing a distributed network of sites each having a local power generation unit using an energy service provider." A1547 at Col. 8:23-25.  Figure 1 of Sinha illustrates the system as a whole, and shows a power generator 104 connected to a load and to a network.



**FIG.1**

A1540.

The Sinha system allows a user to "selectively provid[e] power to each site from the local power generation unit at the site and from a power utility, wherein each site includes a power mode switch connecting a power load at the site to the

local power generation unit and to the power utility." A1547 at Col. 8:26-30. The generator unit may be started and stopped depending on whether the local generator unit will be used to carry the load or a utility will be used. A1546 at Col. 6:21-26. In the Sinha system, a user inputs "power mode instructions" from a local computer and transmits those instructions "to the energy service provider, wherein the instructions dictate conditions for operating the local power generation unit." A1547 at Col. 8:35-39. The system includes "a data communication link" so that the energy service provider can remotely set operating parameters of the generation unit. A1547 at Col. 8:31-33 and 41-44. Finally, the Sinha system includes starting and stopping times as operating parameters that may be set remotely: "[T]he customer can specify certain conditions that dictate the power mode for the DPG . . . . For example, the customer can dictate that for a certain period of time, *e.g.*, a day, a week, or a month (see state **308**), the DPG unit is to be turned off and all power is to be purchased from the power utility." A1546 at Col. 6:3-7.

**Cummins-Onan PowerCommand.** While the jury was not asked at trial to determine whether the Cummins-Onan PowerCommand system anticipated claim 23, it formed part of Kohler's obviousness argument, and the district court held on summary judgment that the PowerCommand anticipated claim 19. Cummins-Onan sold and described its PowerCommand system in literature in the mid-1990s. A3657-A3677. John Ronza, a distributor of Cummins-Onan products during the

relevant timeframe, personally distributed this PowerCommand literature and sold PowerCommand systems described in that literature. The document primarily relied upon by the district court, the January 1996 Bulletin S-1005 (A3658-A3663), fully describes a system which interconnected more than one generator set to a load and to a network, with each generator set being capable of starting and stopping. A75 (citing A3658-A3663); A3659 ("Real load sharing controls allow generator sets to share load . . . ."); A3663 ("The PowerCommand Control includes provisions for optional communications over the Onan PowerCommand Communications Network. The network is suitable for local or remote control and monitoring functions using PowerCommand Software and network modules."); A3659 ("three position switch that starts and stops the generator set locally or enables start/stop control from a remote location."); A3667 (network capability "from a remote location via modem, PC and PowerCommand Network Software.").

The user of a PowerCommand system controlled generator sets by selecting each set and setting predetermined operating parameters, such as speed governing, voltage regulation, synchronizing, and load sharing. A3659. The settings could be sent to each generator set over a network. A3663 ("network is suitable for local or remote control and monitoring functions . . . ."); A3667 ("The PowerCommand's integrated platform enables monitoring and control of all paralleling system

components from a remote location via modem, PC and PowerCommand Network Software.").

The system parameters were all accessible through a remote laptop which allows servicing of the "entire paralleling control system [*i.e.*, more than one generator] by allowing interrogation, monitoring, and adjustment of system parameters with a laptop computer." A3658. Additional documentation also explicitly described the system as networked, A3664-A3667, and showed actual network diagrams of how the system worked:



A3668.

## VI. SUMMARY OF THE ARGUMENT

Because Generac chose to ignore the trial verdicts, evidence at trial and the district court's denial of its post-trial motions, it has waived any right to challenge the results at trial. The district court's order denying Generac's post-trial motions should be affirmed on that basis alone.

Generac focuses its brief on two claim construction arguments, but the district court correctly construed the terms "predetermined operating parameters" and "at least one." Further, the district court correctly held as a matter of law that the Cummins-Onan PowerCommand constituted prior art that anticipated claim 19 of the '821 patent. The arguments presented by Generac do not support reversal. Rather, the undisputed facts conclusively confirm the district court's claim constructions and summary judgment ruling.

Generac's appeal improperly asks this Court to adopt a narrow construction of "predetermined operating parameters" that Generac never offered below. Indeed, the district court adopted Generac's proposed construction of that term in the order granting summary judgment, and then clarified it consistent with the specification and plain meaning. Generac has waived any argument against the claim construction it sought below. Moreover, even if Generac's new, narrower construction applied, claim 19 would still be anticipated because the prior art of record disclosed sending predetermined operating parameters over a network.

14

Generac's argument that summary judgment under any construction was improper because the Cummins-Onan system does not qualify as prior art relies on no actual evidence whatsoever and merely ignores undisputed evidence that supports the district court's judgment. Generac fails to establish any error by the district court, and summary judgment of invalidity of claim 19 should be affirmed on the grounds indicated in the district court's summary judgment order.

Additionally, an alternative ground of affirmance supports the district court's judgment. Generac's avoidance of the details of the trial was no accident. The trial made clear what was already apparent from the summary judgment record—that multiple prior art references disclose all of the elements of claim 19. There is no reasonable dispute regarding the content of this art, including the unrebutted documents and declarations related to the Encorp prior art in the summary judgment record. Anticipation of claim 19 by the Encorp prior art provides an alternative ground for affirming the grant of summary judgment.

Generac incorrectly argues that the claim term "at least one generator set" must be limited to a system in which additional generator sets may be added later. The district court correctly held that the plain and ordinary meaning of this phrase means "one or more than one" generator set, and rejected as "nonsensical" Generac's attempt to distort the plain meaning.

In addition, once the results of the trial are affirmed, the issues decided become law of the case. The limitations of claim 23 are therefore deemed met by the references found to anticipate claim 23 at trial. Because the first three limitations of claim 23 are nearly identical to all of the limitations of claim 19, claim 19 must be invalid for the same reasons. The only manner in which claim 19 is narrower than claim 23 is that it requires a "plurality" of generators rather than "at least one." The prior art of record clearly disclosed this limitation. Accordingly, if the other reasons for affirmance are not adopted, the Court should remand with instructions to enter judgment of invalidity due to anticipation stemming from the results at trial—from which no appeal has been taken— involving nearly identical claim limitations.

## VII. ARGUMENT

### A. Standard of Review

Kohler disagrees with Generac's statement of the standard of review, which is incomplete and inaccurate.

Claim construction is a question of law reviewed *de novo* on appeal. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). While Generac acknowledges that this Court has taken this issue up for en banc consideration, Generac states without any explanation that "[n]othing in this appeal turns on whether the standard of review is *de novo* or deferential." Br. at 16 (*citing Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 500 Fed. Appx. 951,

16

951-52 (Fed. Cir. Mar. 15, 2013)).  If this Court decides to adopt a more deferential standard of review, then that could of course make it more difficult for Generac to prevail on its claim construction arguments.  Kohler believes that the claim construction decisions should be affirmed regardless of the standard of review.

The district court's grant of summary judgment is reviewed *de novo*. *Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1191 (Fed. Cir. 2004).  While all reasonable inferences are made in Generac's favor, that does not absolve Generac of the duty to come forward with some evidence in support of its position in order to create a genuine dispute of material fact.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-28 (1986).

Generac makes no mention of the standard of review applicable to its post-trial motions, and as noted below Generac has failed to properly appeal any of the judgments related to claim 23.  If these issues are not deemed waived, the denial of Generac's JMOL motion is reviewed *de novo*, with all reasonable factual inferences viewed in Kohler's favor, and the denial of Generac's motion for a new trial is reviewed for an abuse of discretion.  *NPF Ltd. v. Smart Parts, Inc.*, 187 Fed. Appx. 973, 975 (Fed. Cir. 2006) (this Court reviews a denial of a motion for JMOL *de novo*, under the law of the Seventh Circuit, and "must also consider all the

evidence before the jury and draw all reasonable inferences in favor of the prevailing party on that issue, *i.e.*, the non-movant."); *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1372 (Fed. Cir. 2008) ("Under Seventh Circuit law, the district court's denial of a motion for a new trial is reviewed for abuse of discretion.").

### B. The District Court's Denial of Generac's Motions for JMOL and a New Trial Must Be Affirmed Because Generac Did Not Make Sufficient Arguments in Its Opening Brief to Contest Those Rulings, and Has Waived the Right to Do So.

Generac studiously avoids any discussion of the trial in its brief and never argues that its motions for JMOL and a new trial should have been granted. Generac's own statement of the issues on appeal also fails to mention anything regarding the results at trial or the correctness of the district court's denial of its post-trial motions. Generac makes two claim construction arguments on appeal and argues for narrower constructions of "predetermined operating parameters" and "at least one." While both of these limitations are in claim 23 and were therefore part of the jury instructions at trial, Generac never argues how the construction of either term impacts any issue at trial. Generac never explains how the construction of "predetermined operating parameters" it now proposes would undermine the jury's numerous, independent findings of invalidity. Generac does mention—in two conclusory sentences—the impact of the "at least one" construction on the invalidity verdicts, but provides no argument or analysis at all.

18

Br. at 26.  None of the claim construction arguments are tied to any of the specific,

independent grounds of invalidity (four anticipation verdicts and an obviousness

verdict).  Nor is the district court's denial of Generac's motions for JMOL and a

new trial addressed.[1]  Generac cannot simply presume that the invalidity verdicts

fall away if one of the claim constructions is held incorrect.  *Verizon Servs. Corp.*

*v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1341-42 (Fed. Cir. 2010) ("We may

affirm the jury's findings on infringement 'if substantial evidence appears in the

record supporting the jury's verdict and if correction of the errors in a jury

instruction on claim construction would not have changed the result, given the

evidence presented.'") (quoting *Teleflex Inc. v. Ficosa N. Am. Corp.*, 299 F.3d

1313, 1328 (Fed. Cir. 2002)).  Without any argument or explanation, there is no

basis to disturb any of the verdicts regarding invalidity or district court's denial of

Generac's motions for JMOL and a new trial related to invalidity.

Generac also fails to set forth any basis to overturn the verdict of no

infringement of claim 23 or the district court's denial of Generac's motions for

JMOL and a new trial as to infringement.  Nor could it, given that Generac is

---

[1] Generac is of course precluded from making these arguments for the first time in its reply brief.  *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) ("This court has consistently held that a party waives an argument not raised in its opening brief."); *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320 n.3 (Fed. Cir. 2005) ("Nor will this court consider [] new arguments raised for the first time in [a] reply brief.").

arguing for two narrower constructions on appeal. If Generac's claim construction arguments are adopted, that will provide further support for the non-infringement verdict and the denial of Generac's related post-trial motions. Despite these obvious impediments, Generac improperly assumes that once the "at least one" construction is narrowed as Generac proposes, then the case should be "remanded for further proceedings regarding Kohler and TES's infringement of claim 23." Br. at 27. This conclusory statement is at odds with common sense due to Generac's claim construction arguments on appeal, and is not developed sufficiently to challenge the verdict of no infringement of claim 23 and the district court's denials of related post-trial motions as they relate to non-infringement.

Generac's failure to properly link any of the arguments in its brief to the issues at trial and the denial of its post-trial motions amounts to a waiver of those arguments. *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341-42 (Fed. Cir. 2013) ("An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived.") (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("[T]he court is entitled to assume that an appellant has raised all issues it deems important against a judgment appealed from.")). Because Generac develops no argument or evidence in support of its few sentences addressing the jury's verdicts and the related evidence introduced at trial, the Court

should affirm the district court's denial of Generac's motions for JMOL and a new trial.

**C.    The District Court Correctly Construed "Predetermined Operating Parameters."**

The primary issue raised by Generac on appeal is the construction of the phrase "predetermined operating parameters" and whether the term covers the Cummins-Onan PowerCommand prior art.  Generac argues that the construction of "predetermined operating parameters" was in error and then assumes summary judgment of invalidity below must be reversed as a consequence.  In the process, Generac avoids critical arguments made and evidence introduced below.  Generac fails to acknowledge that on summary judgment the district court adopted the very construction advocated by Generac.  Generac never argued any other, and is bound by it.  Applying that construction, anticipation results as a matter of law.

**1.    Generac is bound by the claim construction it successfully argued for below.**

In its opposition to Kohler's motion for summary judgment, Generac argued that the "predetermined operating parameters" limitation in claims 19 and 23 should be construed as "a parameter that when varied changes the operation of the system."  A5383 (Dkt. 62 at 13).  The district court adopted that construction verbatim in its order granting summary judgment of anticipation of claim 19.  A57-

21

A58 (Dkt. 108 at 13-14). Generac never argued for any other construction to the

district court, and may not seek a new construction now.[2]

In a subsequent order, the district court clarified its construction as

"parameters that are set prior to their transmission and when varied change the

operation of the system." A92 (Dkt. 147 at 4). As indicated in the district court's

jury instructions, the district court determined that "start" and "stop" may be

operating parameters. *Id.*; A10393 (Dkt. 166 at 15). Generac takes issue with that

construction and its application to the prior art. However, Generac cannot run

from its own proposed construction below. Importantly, in the briefing on the

motion for clarification issue, Generac never argued for an alternative or new

construction that would support its position that the claims could not cover "start"

and "stop" commands.

On appeal, Generac now argues for a new construction it never advanced

below:

---

[2] After the summary judgment order issued, Kohler moved for clarification because
it believed that claim 23 should also have been held invalid as anticipated on
summary judgment using the Court's own reasoning in that order. A7510-A7513
(Dkt. 106). In response, Generac effectively argued for reconsideration of the
grant of summary judgment of claim 19. A8283-A8289 (Dkt. 128). The district
court acknowledged this, and the unfairness to Kohler because it never had a
chance to respond to Generac's new arguments, and ultimately rejected both
parties' attempts to change the scope of the summary judgment order. A89-A96
(Dkt. 147). In its brief, Generac never argued for a different construction of
"predetermined operating parameters," instead arguing for a narrower application
of the construction already adopted by the district court. A8285-A8288 (Dkt. 128).

> "Predetermined operating parameters" as used in claims 19 and 23 are settings that have been transmitted to and used by each generator set to configure the operating characteristics of the generator set in the power system.

Br. at 17. Generac's new construction adds significant language to its earlier proposed construction. In particular, Generac adds the phrase "to configure the operating characteristics of the generator," which is entirely new and not part of its proposed constructions below. Generac is precluded from shifting on such an important position for the first time on appeal. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358-59 (Fed. Cir. 2006) ("[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below."); *id.* at 1359 ("[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial.").

Generac's attempt to introduce a new construction on appeal is driven by the problems with the construction it successfully advanced at the summary judgment stage. That construction is problematic for Generac because it clearly covers sending "start" and "stop" commands. The construction requires "a parameter that when varied changes the operation of the system." A57-A58 (Dkt. 108 at 13-14). "Start" and "stop" commands are certainly "parameters" that affect the operation of the system by making it active or inactive. When a generator is inactive (*i.e.*, off) and a "start" command is sent, the parameter (on or off) is varied and the

23

operation of the system changes because the generator turns on. The same is true when a "stop" command is used to turn a generator that is currently on, off. The district court also confirmed that "start" and "stop" meet Generac's proposed construction. A92 ("Contrary to Generac's argument, start and stop . . . are parameters that change the operation of the system, and are thus operating parameters.").

Generac has never disputed that the Cummins-Onan PowerCommand system sends "start" and "stop" commands over a network to multiple generators.[3] Accordingly, if Generac's own construction below is applied again on appeal, then anticipation results.

## 2. The district court's construction on clarification was correct.

Although Kohler did not believe that the district court's construction of "predetermined operating parameters" needed clarification, that clarified construction was not erroneous. The district court attempted to give further meaning to the construction of "predetermined operating parameters" by focusing on the word "predetermined." A91-A92. The district court noted the lack of guidance in the specification when explaining its effort to read the term consistently with its common meaning:

---

[3] Generac does contend that the Cummins-Onan PowerCommand system relied on by Kohler never existed. That argument will be addressed below.

Predetermined, of course, means "determined in advance." Oxford
English Dictionary, Online (September 2012). This, itself, raises the
additional question of what time the parameters must be determined in
advance of. The patent itself does not include any indication as to
what, exactly, those parameters must be determined in advance of. In
the absence of such an indication, the only logical time for
predetermination cutoff is prior to the implementation of those
parameters by transmission to the generator set, because it is at that
juncture that the user can no longer determine those values. Thus, to
clarify, the Court determines that predetermined operating parameters
are parameters that are set prior to their transmission and when varied
change the operation of the system.

A91-A92.

The district court's approach was perfectly reasonable. The attempt to give

the term its plain and ordinary meaning is appropriate when the specification does

not define the term, and never distinguishes the predetermined operating

parameters from other commands. The specification is explicit that "various

operating parameters" is defined broadly, and Generac acknowledges that the term

encompasses simple start and stop times as well as minimum kilowatts used by the

generators and the number of generators in the system. Br. at 19-21. Generac

would limit the term so that it does not cover "real time" commands such as "start"

and "stop," but the specification makes no such distinction. Accordingly, there is

no clear disavowal of claim scope in the specification that requires adoption of

Generac's new construction on appeal. In such circumstances, giving the terms

their broad, ordinary meaning is proper. *CCS Fitness v. Brunswick Corp.*, 288

F.3d 1359, 1366-67 (Fed. Cir. 2002) (The Federal Circuit "indulge[s] a 'heavy

presumption' that a claim term carries its ordinary and customary meaning" and "a court may constrict the ordinary meaning of a claim term" only where "the intrinsic evidence shows that the patentee . . . expressly disclaimed subject matter"); *see also Omega Eng'g, Inc.*, 334 F.3d at 1322-23 (Fed. Cir. 2003) (finding no express disclaimer or independent lexicography warranting the limiting of the claim language); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1308-09 (Fed. Cir. 2005) (the ordinary meaning of a term governs absent an express disclaimer in the patent).

Generac's citations to various operating parameters listed in the specification do not require a narrower construction. As an initial matter, those specific examples, such as setting a time to start and stop a generator in the future, are not claimed in claim 19 (or 23). In fact, those specific parameters are claimed elsewhere, suggesting that those details should not be read into claims 19 and 23, which are silent on the issue. *See* A132 at Col. 12:56-59, A133 at Col. 14:22-26 (claims 7 and 16 recite parameters that include "a starting time" and "a stopping time"). Similarly, Generac's new construction on appeal refers to "settings" used to "configure" generators. Br. at 17. This might help Generac avoid prior art that arguably does not vary specific settings but instead sends start and stop commands. Again, these details, including specific "values" for parameters akin to Generac's proposed "settings," are found in other claims and various portions of the

specification.  *See* A132 at Col. 12:7-9, 12:50-52; A133 at Col. 13:27-29, Col.

14:16-17 (claims 1, 7, 10, 16 all refer to a user interface that allows a user "to set

values of various predetermined operating parameters").  In fact, claims 19 and 23

are the only claims of the '821 patent that do not refer to setting these "values."

This limitation should not be read into claims 19 and 23 when it was deliberately

avoided by the patentee, whether it is through Generac's new construction or

another construction.

Generac's new construction not only is narrower than the plain meaning and

is presented for the first time on appeal, but also presents a moving target.  After

setting out the proposed new construction, Generac then proceeds to apply it in

ways that obfuscate what Generac actually proposes as the metes and bounds of the

limitation.  For example, Generac argues that predetermined operating parameters

"are fundamentally distinct from real-time command that are immediately executed

upon receipt by the generator set because predetermined operating parameters are

input to establish and configure operation of the generator set for the system as a

whole."  Br. at 22; *see also* 24.  This redefinition of Generac's new construction

imposes additional constraints that have no place in the claim construction.  It also

reveals the unworkability of Generac's approach.  For instance, if the claim does

not cover commands that are "immediately executed upon receipt" by the

generator, how much time must pass after receiving the command to meet the

27

claim requirement?  What does "the system as a whole" mean and how much of

the system must be impacted by the parameter to meet this limitation?  More

importantly, what are the grounds for importing these vague limitations into claims

19 and 23, and why were they not presented below?  Generac's new and ever-

changing claim construction should not be adopted.  The ordinary meaning

adopted by the district court is far more appropriate.

As discussed above, there is no dispute that the Cummins-Onan

PowerCommand prior art discloses this limitation if the district court's claim

construction is adopted because the prior art at a minimum discloses the use of

start and stop commands over a network.  Whether Generac's proposed

construction below or the clarified construction of the district court is applied,

anticipation results.

### D. Even If Generac's New Construction of "Predetermined Operating Parameters" on Appeal is Used, There is No Basis to Disturb the Jury's Verdicts or the District Court's Denial of Generac's Post-Trial Motions.

The phrase "predetermined operating parameters" appears in claim 23 as

well as claim 19, and is therefore potentially relevant to both the trial verdicts and

grant of summary judgment.  The proper construction of the limitation will be

discussed below.  Even assuming Generac's construction was used at trial, it would

not have altered the outcome on any of the verdicts.  Generac has not even

bothered to argue that any of the verdicts would have been different if its new

28

construction had been used at trial. A brief review of the relevant evidence reveals why.

Generac's argument for a narrower construction of "predetermined operating parameters" of course lends further support to the non-infringement verdict and the district court's denial of Generac's post-trial motions in that respect. Generac's narrower construction also fails to undermine the invalidity verdicts because the prior art at issue disclosed the "predetermined operating parameters" even if Generac's newly-proposed construction is used. While tough to pin down, Generac's current construction of the limitation appears to be: "settings that have been transmitted to and used by each generator set to configure the operating characteristics of the generator set in the power system." Br. at 17. Generac emphasizes that the limitation requires "preselection as well as an impact on the operating behavior of the generator set in the system." *Id.* In Generac's view, pushing a button that starts or stops a generator is not "preselection" of that setting, but setting a time to turn a generator on in the future does qualify as a "predetermined operating parameter." In addition, setting the number of generators in the system, the minimum kilowatts of the generator, and the addresses for the generator are also "predetermined operating parameters" under Generac's position. Br. at 21.

29

Setting aside the fact that Generac's argument is entirely new on appeal and waived, it is clear that the prior art introduced at trial disclosed systems that included transmission of predetermined operating parameters over a network even under Generac's new construction. This prior art included all four of the prior art references that were found to be anticipatory by the jury.[4] In addition, the prior art presented in support of obviousness included numerous references that disclosed the transmission of predetermined operating parameters over a network. For example, the Cummins-Onan PowerCommand system allowed the user to input various commands via a laptop that was remote from the generators, including the ability to start and stop a generator in the future. A3658; A3661. Prior to trial the district court had already found that Cummins-Onan sent exactly those parameters in its Power Command product: "The PowerCommand system contemplates the starting and stopping of generators at a predetermined time ('PowerCommand Paralleling Generator Set Control' 1/96 Bulletin S-1005, at 4 [A3661] (adjustment menu allows setting of time delayed start and stop) . . . ." A76. Thus, even

---

[4] These prior art references all disclose the use of predetermined operating parameters using Generac's narrow construction advocated on appeal: Encorp's Multiple Genset Paralleling System (A2714-A2716, A3033-A3059, A3099-A3179, A3180-A3199, A3208-A3258, A3260-A3306, A3308-A3562, A3564-A3610, A3679-A3730), Kohler's Decision Maker 340 (A317-A386, A387-A456, A500-A505, A506-A565, A566-A625, A626-A685, A11563, A11564), Generac Utility 50 (A912-A921), and U.S. Patent No. 6,697,951 to Sinha (A1539-A1548).

applying the example used by Generac, the prior art explicitly shows the sending of at least two of the various operating parameters over a network.

Because virtually all of the prior art at issue at trial disclosed the transmission of predetermined operating parameters over a network, even using Generac's construction, there is no basis to disturb any of the jury's invalidity verdicts or the district court's denial of Generac's post-trial motions related to those verdicts. *Verizon Servs. Corp.*, 602 F.3d at 1341-42 (Courts should affirm if substantial evidence supports the verdict under the correct construction).

### E.    The Undisputed Evidence in the Summary Judgment Record Established That the Cummins-Onan PowerCommand System Anticipates Claim 19 Under Any Construction.

As in the district court below, Generac offers nothing more than unsubstantiated denials against a mountain of documentary and testimonial evidence regarding the Cummins-Onan PowerCommand system. Indeed, until the import of the Cummins-Onan PowerCommand prior art became clear, Generac engineers freely admitted the existence and sale of the product. A3010 at 349:7-19 (Dkt. 43-8). Generac fails to identify any genuine issue of material fact precluding judgment as a matter of law that the PowerCommand system anticipates claim 19.

### 1.    Every element of claim 19 was disclosed in the Cummins-Onan PowerCommand system.

Generac does not argue that the Cummins-Onan PowerCommand fails to disclose all of the elements of claim 19 when the district court's (originally Generac's own) construction of "predetermined operating parameters" is used.

31

CASE: PARTICIPANTS ONLY

Case: 13-1311   Document: 40   Page: 39   Filed: 12/09/2013

Even using Generac's new construction on appeal, the documents' diagrams, photographs and descriptions disclose every element of claim 19. Mr. Ronza, a salesperson for a distributor of Cummins-Onan products during the relevant critical time, authenticated the documents and testified by declaration that he personally distributed the written publications and sold systems described in the materials.[5] A3657.

The district court correctly found that any reasonable juror would have found every process element of claim 19 in the PowerCommand documentary evidence. First, the PowerCommand system undeniably provides a method of managing the distribution of power. A3658-A3663.

Second, the PowerCommand system interconnects a plurality of generator sets to a network and to a load. A3659 ("Real load sharing controls allow generator sets to share load . . . ."); A3663 ("The PowerCommand Control includes provisions for optional communications over the Onan PowerCommand Communications Network. The network is suitable for local or remote control and monitoring functions using PowerCommand Software and network modules.").[6] The generator sets in the PowerCommand system, like all generator sets, can be

---

[5] Generac chose not to depose Mr. Ronza, and therefore any attacks on his credibility are utterly scurrilous.

[6] Other documents also discuss the system's network capability "from a remote location via modem, PC and PowerCommand Network Software." A3667.

started and stopped.  A3659 ("three position switch that starts and stops the generator set locally or enables start/stop control from a remote location.").

Third, the PowerCommand system user controlled generator sets by selecting each set and setting predetermined operating parameters, such as speed governing, voltage regulation, synchronizing, and load sharing.  A3659.  Fourth, the settings could be sent to each generator set over a network.  A3663 ("network is suitable for local or remote control and monitoring functions . . . .").[7]

Generac admits that even under its new, narrow construction proposed on appeal, setting a start and stop time meets the "predetermined operating parameters" limitation.  The specification describes this option using the following language:  "A first of the various operating parameters is a starting time for starting the selected generator set and a second of the various operating parameters is a stopping time for stopping the selected generator set."  A127 at Col. 2:37-40.  What Generac fails to acknowledge is that the district court correctly found that Cummins-Onan sent exactly those parameters in its PowerCommand product:  "The PowerCommand system contemplates the starting and stopping of generators at a predetermined time (PowerCommand Paralleling Generator Set Control" 1/96 Bulletin S-1005, at 4 (adjustment menu allows setting of time delayed start and

---

[7] Other documents discuss that the "PowerCommand's integrated platform enables monitoring and control of all paralleling system components from a remote location via modem, PC and PowerCommand Network Software."  A3667.

stop)." A76. Thus, even applying the example used by Generac in its patent, the prior art explicitly shows the sending of "predetermined operating parameters" over a network. Generac has never been able to create a genuine issue of fact that challenges this clear reading of the contemporaneous documents, whether below or in its brief on appeal, and summary judgment of anticipation should be affirmed regardless of the construction used for "predetermined operating parameters."

The district court properly noted that it is entitled to rely on multiple documents in an anticipation analysis when a single system was "on sale" and cited multiple documents to further support the presence of each element in the Cummins-Onan PowerCommand prior art. A73-75 and n.5. It is important to note, however, that the district court cited a single document, a January 1996 bulletin (A3658-A3663) as disclosing all of the limitations of claim 19. A74-75 (citing 1/96 Bulletin S-1005). Under such circumstances, anticipation by a "printed publication" under 35 U.S.C. section 102(b) is the result. *In re King*, 801 F.2d 1324, 1326 (Fed. Cir. 1986) (if device in prior art necessarily performed claimed method it anticipates). Generac's feigned confusion over which "on sale" "system" is relied on for anticipation (discussed in the next section) is irrelevant to a "printed publication" reference. Regardless of whether this prior art is viewed as a "printed publication" or a "system" that was "on sale" under section 102(b), there is no reasonable dispute that all of the limitations of claim 19 were disclosed.

### 2. There is no reasonable dispute as to whether the Cummins-Onan PowerCommand system existed.

The district court—which set the bar exceedingly high as to what constituted undisputed evidence of a prior art system—correctly found that undisputed evidence established the existence of a system on sale prior to the critical date which performed all of the elements of claim 19. Cummins-Onan's products were well known throughout the relevant time period. A3010 at 349:7-19 (Dkt. 43-8). Cummins-Onan sold and described its PowerCommand system in literature long before the critical date. A3657-A3677.

At every step of the case, Generac offered nothing more than mere denials of Mr. Ronza's testimony and a disingenuous skepticism that detailed brochures, which contained network diagrams, screen shots and multipage technical reports, accurately represented what was sold.[8] Generac offered not one shred of evidence contradicting Mr. Ronza's testimony, challenging the authenticity of the documents, or suggesting that they somehow were inaccurate portrayals of the products they described. While the burden is certainly on the defendant to adduce clear and convincing evidence of invalidity, Kohler readily met that burden by

---

[8] Significantly, Generac used the same adjective, "phantom" to denigrate the Encorp prior art in summary judgment. "Even if Kohler's phantom Encorp system existed," argued Generac in its response to Kohler's motion for summary judgment, summarily dismissing literally thousands of pages of manuals, literature and testimony about a generator control system with the word "phantom." A5392. This feigned skepticism fell away after the weeklong jury trial whereby the jury found by clear and convincing evidence that the Encorp system was not a phantom at all. Generac now applies the same term to describe the Cummins-Onan system.

presenting authenticated technical literature, and testimony regarding the

installation of actual systems for specific customers.  A3657-A3677; *see also*

A7311-A7312.  *Adenta GmbH v. OrthoArm, Inc.,* 501 F.3d 1364, 1368 (Fed. Cir.

2007) ("given the quality and quantity of the [documents offered to corroborate the

oral testimony], a reasonable fact finder could conclude that clear and convincing

evidence showed that [the prior art product] was publicly used or on sale [more

than one year prior to the priority date].").

      Generac's citation to *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d

1368, 1371 (Fed. Cir. 1998), is stunningly inapposite.  In that case, the district

court merely relied on oral testimony uncorroborated by physical or documentary

evidence.  "Oral evidence, standing alone, did not provide the clear and convincing

evidence necessary to invalidate a patent on the ground of prior knowledge and use

under 102(a)."  This Court stated that oral testimony should be corroborated by

documentary evidence.  *See also Baker Hughes, Inc. v. Davis-Lynch, Inc.*, 31 Fed.

Appx. 650, 657 (Fed. Cir. 2002) (In establishing the on-sale bar in patent

infringement cases, "our caselaw does favor the use of documentary evidence to

corroborate oral testimony.").

      Here, the district court did not merely rely on oral testimony.  To the

contrary, the evidence relied upon by the district court consisted predominantly of

documents.[9]  Oral testimony explained the documents rather than supplanting

them.  Mr. Ronza, in a declaration presenting facts that stand entirely unrebutted,

made the very simple points that these documents existed at the time stated on the

documents, that they were authentic, and that he actually sold the products

described at the time of the documents.  The products were not "fictitious" or

"phantom," and the exhibit list for trial included not only product specifications for

a specific 1995 installation, but also pictures of the dates on the generators.

Generac fails to create a genuine issue of material fact with respect to this

evidence or the district court's judgment.  Its cursory attack on Mr. Ronza's

credibility utterly lacks any support in the record.  Mr. Ronza was a Cummins-

Onan salesperson for years, and collected documents during that time.  A3657.

Generac engineer Allen Gillette offered no evidence contradicting the authenticity

of the documentation or the sales.  A3010 at 349:7-19.  Mr. Gillette's testimony

actually proves that there is no dispute that Cummins-Onan was selling these

products at the time of the documentation and that he personally was aware of the

sales.  *Id.*  At best Mr. Gillette professes ignorance of the specifics, but offered no

dispute of any facts or documents in the record.

---

[9] The district court relied primarily on the documentary evidence regarding the
Cummins-Onan prior art that was submitted as Exhibits A-D to the first Ronza
Declaration (A3658-A3677) and did not rely on the Supplemental Ronza
Declaration (A7311-A7312).  *See* A72-A77; A89-A95.

Because there was no genuine dispute as to authenticity of the documentation, nor any evidence rebutting Mr. Ronza's testimony of sale, the district court was absolutely correct to find systems performing the functions described in the documentation to be prior art. It found that each element of claim 19 was described in one single document, the 1/96 Bulletin S-1005 (A3658-A3663). This single document fully describes a system which interconnected more than one generator sets to a load and to a network, with each generator set being capable of starting and stopping. A75 (citing A3658-A3663).

The district court found that this document describes the second and third elements of claim 19 in that it "calls for the selection of generator sets through a user interface and the setting of various operating parameters, which may then be submitted over a network." A75 (citing A3661). The document itself, as authenticated by Mr. Ronza, showed the adjustment menu allowing the setting of operating parameters (A3657-A3663) and stated that the "network is suitable for local or remote control and monitoring functions," (A3663), satisfying the third element of claim 19.

Contrary to the cherry-picked language cited by Generac, regarding the "adjustment menu" on a panel, the cited document makes clear that the system parameters are all accessible through a remote laptop which allows servicing of the "entire paralleling control system [*i.e.,* more than one generator] by allowing

interrogation, monitoring, and adjustment of system parameters with a laptop

computer."

**Integrated Control System**

The PowerCommand™ Control is a microprocessor-based generator set monitoring, metering, and control system. It offers advanced levels of functions for reliability and optimum generator set performance.

An extensive array of integrated standard control and digital display features eliminates the need for discrete component devices such as voltage regulator, governor and protective relays. It also eliminates the need for separate paralleling control devices such as synchronizers and load sharing controls, import/export controls, and var/power factor controls. The consolidation of controls allows the system to occupy much less physical space than conventional control arrangements.

The control system facilitates state-of-the-art servicing of the entire paralleling control system by allowing interrogation, monitoring, and adjustment of system parameters with a laptop computer.

A3658.

The documents not only described these features, it also provided pages of

detail.  Additional documentation reinforces that this system was networked:

Networking capability. The PowerCommand's integrated platform enables monitoring and control of all paralleling system components from a remote location via modem, PC and PowerCommand Network Software. All with the convenience and reliability of twisted-pair communication. Network connection means easy installation. Fewer interconnect points means faster installation with fewer errors.

A3667.

The literature also showed actual network diagrams of how the system

worked:



A3668.  The district court was certainly entitled to rely on this evidence of the

prior art.  *Adenta GmbH*, 501 F.3d at 1368 ("given the quality and quantity of the

[documents offered to corroborate the oral testimony], a reasonable fact finder

could conclude that clear and convincing evidence showed that [the prior art

product] was publicly used or on sale [more than one year prior to the priority

date].").

In light of this evidence, Generac's naked denial fails to create a genuine

issue of material fact.  *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306,

1324-25 (Fed. Cir. 2013) (holding "summary judgment was proper because

[patentee] failed to set forth any specific facts precluding summary judgment" and

noting that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial") (quoting *Anderson*, 477 U.S. at 248); *see also Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984) ("The party opposing the motion must point to an evidentiary conflict created on the record . . . [m]ere denials or conclusory statements are insufficient."). The Federal Circuit elaborated on this issue in *Enzo Biochem v. Gen-Probe, Inc.*:

> Although the ultimate burden of proof remained on Gen-Probe, once it came forward with evidence to establish that the material shipped to Ortho in December 1984 was GC155, it was proper for the district court to shift the burden of production of evidence to refute Gen-Probe's evidence to Enzo. While it is true that a court must draw all reasonable inferences in favor of the nonmoving party, Enzo presented no evidence to the district court disputing the identity of the Ortho delivery. Instead, the court was faced only with Enzo's arguments and perhaps a suggestion of what Enzo might present at trial; that alone is insufficient to meet its burden of production. Attorney argument is no substitute for evidence. Although, as Enzo correctly stated at oral argument, a nonmoving party can defeat a motion for summary judgment by explaining why a party (Gen-Probe) with the burden of proof cannot meet its summary judgment standard, Enzo is mistaken that Gen-Probe has not met that hurdle. Once the district court determined that Gen-Probe satisfied its burden, and we agree that it did, it was incumbent upon Enzo, as the nonmoving party, to produce some evidence refuting Gen-Probe's claim. We find no error in the district court's reasoning, and we agree that Enzo failed to establish the existence of a genuine issue of material fact sufficient to avoid summary judgment.

424 F.3d 1276, 1284 (Fed. Cir. 2005).

41

Generac offered no evidence at all rebutting the Cummins-Onan documents or Mr. Ronza's testimony. In effect, Generac's appeal relies on the far-fetched and unsupported notions that all of these documents are forgeries, and that Mr. Ronza lied under oath. Such baseless denials and wild speculation only create issues of fact if they themselves are supported by evidence. Generac presents none, and no reasonable juror could doubt on this record that Cummins-Onan sold generators in conformance with years of prior art publications and technical bulletins bearing its name, detailed descriptions of its products, and formal dates. The court carefully reviewed the documentation provided, and found that the documents similarly disclose each and every one of the process elements of claim 19. A75.

Contrary to Generac's repeated use of the word "phantom" to describe these systems, Mr. Ronza declared under oath the fact that he sold systems with exactly the capabilities described in very detailed sales literature. In other words, he merely testified to the very unremarkable fact that the sales literature accurately described the product he sold. He was not required to produce invoices to re-confirm his claim as Generac suggests, given the numerous, detailed dated documents already in the record. There is no reason to believe, and certainly no evidence, that the myriad diagrams, screenshots and descriptions targeted at a sophisticated professional audience were mere puffery, and that Cummins-Onan was somehow lying to the world regarding the capabilities of its master control

42

panel and ability to be controlled remotely by a laptop computer.  Mr. Ronza's declaration also made clear that he distributed this literature for the purpose of selling systems which performed in conformity with the sales literature.[10] Certainly such testimony, unrebutted, meets the standard required to show prior art.  Once such evidence was adduced, the burden shifted to Generac to rebut it in some way to create an issue of fact.  That it never did.

    **F.    The District Court Correctly Construed Of "At Least One."**

Although Generac completely ignores the trial verdicts, record, and post-trial order denying its motions, it does raise a claim construction argument regarding the phrase "at least one" that only relates to claim 23.  The district court correctly construed the phrase "at least one generator set" to mean "one or more than one generator set."  Generac fails to establish any error in this claim construction.  The claim language is clear and unambiguous.  The plain meaning of the phrase "at least one" means that there could be only one, or more than one.  As one court put it, "[a]nyone with even the most rudimentary understanding of the English language understands 'at least one . . .'" means "one or more." *Kistler Instrumente AG v. United States*, 628 F.2d 1303, 1318, 211 U.S.P.Q. 920, 920 (Ct. Cl. 1980);

---

[10] Mr. Ronza's unrebutted supplemental declaration stated that he sold such a system in 1995 to the University of Arkansas which had a master control panel for remotely controlling the paralleled generators.  While not in the record on summary judgment, a marked but unused set of trial exhibits included the entire specification for the Arkansas site, as well as photographs of the generators.

*see also Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999) ("'[A]t least one' means that there could be only one or more than one.") (citing *Kistler Instrumente AG*, 628 F.2d at 1318).

Contrary to Generac's contention, claim 23 of the '821 patent does not require generator sets capable of interconnection with additional generator sets. Indeed, the '821 patent itself describes the Field of the Invention as "electrical generators, and in particular . . . a system control for monitoring and controlling ***one or more generator sets*** which are connectable to a load." A127 at Col. 1:7-9 (emphasis added). As claim 23 recites, the "at least one generator set" must be interconnected to a load and to a network. A134 at Col. 15:6-10. Nowhere does the claim require that the "at least one generator set" be interconnectable to another generator set. A single generator set may of course be "selected" as recited by the claim. Moreover, the fact that "each" generator set must be capable of starting and stopping does not mandate the interconnection of additional generator sets at some time in the future. The term "each" is not plural.

Generac's nonsensical claim construction improperly rewrites the claim to require generator sets that may later be connected to additional generator sets. The claim language is to the contrary. The careful usage of "at least one" in claim 23 is also in contrast to the "plurality" of generators required in claim 19—Generac

knew how to claim less than a plurality when it wanted to do so, yet Generac
would remove that distinction now.  As noted by the district court:

> Claim 23 explicitly uses different language than Claim 19,
> interchanging "at least one" for "plurality."  The Court has already
> determined [and Generac does not appeal] that "plurality" means
> more than one—and if Generac intended its language to be construed
> as "more than one," the Court cannot fathom why it would change its
> language from something that clearly means "more than one" to a
> phrase ("at least one") that by its clear terms means "one or more than
> one."

A16.  Generac demonstrated no error in the district court's construction of "at least
one generator set" in claim 23.  The district court correctly applied the plain and
ordinary meaning of the claim language.

Even if Generac were correct on the proper construction of "at least one,"
that does not mean they would get to start over on claim 23.  Because Generac is
arguing for a narrower construction than the district court adopted, the jury's non-
infringement verdict should stand.  In addition, only one of the many prior art
references introduced at trial, Generac's own Utility 50, was limited to a single
generator, A912-A921, so the invalidity verdict on all other prior art would stand
even under Generac's claim construction.[11]  In addition, the prior art presented in

---

[11] The other prior art that formed the basis for the anticipation verdicts (A10513)
all included multiple generators:  Encorp's Multiple Genset Paralleling System
(A2714-A2716, A3039, A3033-A3059, A3099-A3179, A3180-A3199, A3208-
A3258, A3260-A3306, A3308-A3562, A3564-A3610, A3679-A3730), Kohler's
Decision Maker 340 (A317-A386, A387-A456, A500-A505, A506-A565, A566-

support of obviousness included numerous references that disclosed multiple generators within the same network.[12]

Accordingly, because the adoption of Generac's proposed construction of "at least one" would not change the jury verdicts of non-infringement or invalidity of claim 23, the allegedly erroneous construction of "at least one" would be harmless error.

### G. The Summary Judgment Record Contained Independent Grounds for Affirming the District Court's Grant of Summary Judgment.

Prior art references in addition to Cummins-Onan support the district court's judgment that claim 19 is invalid as a matter of law. For example, the undisputed facts in the record compel the conclusion that the Encorp Multiple Genset Paralleling System, which was publicly known and used prior to 2000, anticipates claim 19. Accordingly, this Court should affirm the district court's judgment, if necessary, on this alternative ground. *See, e.g.*, *Mehl/Biophile Int'l Corp, et al. v. Sany Milgraum, M.D., et al.*, 192 F.3d 1362, 1366 (Fed. Cir. 1999) ("[A]ppellees always have the right to assert alternative grounds for affirming the judgment that are supported by the record.") (quotations and citations omitted).

---

A625, A626-A685, A11563, A11564), and U.S. Patent No. 6,697,951 to Sinha (A1539-A1548).

[12] This prior art supporting the obviousness verdict (A10513) included the references cited in the previous footnote, and also included the Cummins-Onan PowerCommand (A3658-A3677), U.S. Patent No. 5,734,255 to Thompson (A460-A499), and U.S. Patent No. 5,278,771 to Nyenya (A297-A307).

Undisputed evidence in the record establishes, clearly and convincingly, that the Encorp multiple genset paralleling system anticipates claim 19 as a matter of law. The district court declined to find anticipation by the Encorp prior art mainly because it was not sure whether the "products *actually* exist." A71 (emphasis in original). The district court was also unsure whether the prior art included the required user interface, although it noted that Kohler's expert testified to that effect. A72. As shown below, the evidence that the Encorp product existed and included the required user interface was unrebutted, and summary judgment of anticipation should have been granted on this basis in addition to the anticipation by the Cummins-Onan prior art.

An Encorp presentation given at the Arizona Corporation Commission Distributed Generation & Interconnection Workgroup Meeting on October 25, 1999, entitled "The Business Case for the Virtual Power Plant," explicitly discloses each element of claim 19 (and, as the jury found, of claim 23, as well).[13] A6930-A6976 (Dkt. 74-3); A757-A803 (TX 1277). The presentation is a matter of public record verified by the State of Arizona Corporation Commission. A3679-A3730 (Dkt. 47). That presentation, standing alone, qualifies the system and its components, including the Encorp GPC controller, as prior art known or used by others. *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1369 (Fed.

---

[13] The Virtual Power Plant ("VPP") is the name of an Encorp Multiple Genset Paralleling System.

Cir. 2000) ("A presentation indicative of the state of knowledge and use in this country . . . qualifies as prior art for anticipation purposes under § 102."). Further, an article produced by Encorp under subpoena by Generac conclusively establishes that Encorp's Virtual Power Plant was sold beginning in 1996, and that prior to the article's publication date of January 3, 2000, Encorp multiple genset control systems had been installed for the Tennessee Valley Authority, Public Service of New Mexico, and Carolina Power & Light. A6769-A6773 at A6771-A6772 (Dkt. 74-2). The documents and related declarations supporting the existence of the Encorp prior art were unrebutted, and there was no genuine dispute on this issue.

The presentation, like the '821 patent, discloses a method for managing the distribution of electrical power using a graphical interface. The presentation shows multiple generator sets at a "DER [distributed energy resource] site" connected to a load and to a network. A6930-A6976. The generators are described as being controlled by "[c]ontrols that communicate using current and future communication media—[t]elephone, [c]ellular, [i]nternet, [m]icrowave, [r]adio, [s]atellite."[14] A6930-A6976 at A6973 (Dkt. 74-3). The system overview (and all other screen shots) discloses "remote monitoring and control" of the multiple generators:

_____

[14] Significantly, this is almost identical to the network communication described in the '821 patent "a communication network such as a telephone network, a computer network, the internet or a combination for communication thereon." A132 at Col. 11:41-43.



A6959; A6944 ("Local & Remote PC Communications Interface"; "Network

Communications for I/O expandability"). The document also describes a user's

real time control over its remote generator sets, which have the ability to be started

and stopped, as shown in the lower right corner of the screen shot below:



A6961.



*Id.*

The VPP screen shots disclose a system that allows a person, using a
graphical user interface, to select each generator set, set predetermined operating
parameters for that generator set (like synchronizing as shown below), and transmit
the settings over a network ("Send New Configuration Variables"):



A6967.  The system further permits a user to set predetermined start and stop

times:



A6962.

The evidence above was in the summary judgment record. At trial, the jury determined based on the entire record that the Encorp multi-genset paralleling system anticipated claim 23. A10513. Generac has not appealed from the judgment entered on that verdict. As noted above, the first three elements of claim 23 form the entirety of claim 19. Thus the Encorp system necessarily anticipates claim 19.

Accordingly, even if this Court determines that the Cummins-Onan system does not anticipate claim 19, the summary judgment of invalidity should still be

affirmed because the record establishes as a matter of law that the Encorp

presentation anticipates claim 19.  The evidence of record shows that the Encorp

products actually existed and that they included the required user interface, the two

reasons the district court relied on to deny summary judgment on this issue.  In

fact, the evidence is supported by a first-hand witness, whose testimony was

unrebutted.  A3022-A3024 ¶¶ 12-14 (Whitham Decl.).  Generac was required to do

more than merely doubt the evidence, through attorney argument, to avoid

summary judgment on this issue.  Because no genuine disputes of material fact

existed on these issues, summary judgment was and is appropriate.

### H.    The Verdict of Anticipation of Claim 23 Requires a Finding of Anticipation of Claim 19 As a Matter of Law.

The similarity in scope between claims 23 and 19 presents another basis to

affirm the summary judgment of invalidity of claim 19 as a matter of law, or at

least a basis to remand with instructions to enter such a judgment or do so now on

appeal.

| Anticipated Claim 23 | Claim 19 |
|---|---|
| A method of managing the distribution of electrical power, comprising the steps of: | A method of managing the distribution of electrical power, comprising the steps of: |
| interconnecting **at least one** generator set to a load and to a network, each generator set having the ability to be started and stopped; | interconnecting a **plurality** of generator sets to a load and to a network, each generator set having the ability to be started and stopped; |

| | |
|---|---|
| selecting a generator set and setting various predetermined operating parameters for the selected generator set; | selecting each generator set and setting various predetermined operating parameters for each selected generator set; and |
| transmitting the settings of the predetermined operating parameters over the network to the selected generator set; | transmitting the settings of the predetermined operating parameters over the network to each selected generator set. |
| starting the selected generator set at a first predetermined time; and | |
| stopping the selected generator set at a second predetermined time. | |

For the reasons stated above, the verdicts of invalidity as to claim 23 should not be disturbed. That ruling on the invalidity of claim 23 becomes law of the case for subsequent proceedings. *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007); *see also Accenture Global Servs.*, 728 F.3d at 1341-42; *In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986); *AFG Indus. v. Cardinal IG Co.*, 594 F. Supp. 2d 889, 898 (E.D. Tenn. 2008). In other words, once the result at trial is affirmed (or not appealed), Generac is precluded from arguing that the prior art found to anticipate claim 23 at trial fails to disclose all of the limitations of claim 23. More specifically, the following prior art was found to disclose the first three elements of claim 23: Encorp's Virtual Power Plant, Kohler's Decision Maker 340, and U.S. Patent No. 6,697,951 to Sinha. A10513.

The first three limitations of claim 23 are virtually identical to all of the limitations of claim 19 with one exception—claim 19 requires a plurality of generators. The law of the case doctrine may not, standing alone, require judgment

54

as a matter of law that claim 19 is anticipated by the references listed above.  But if

all of the other limitations of claim 19 are disclosed by those references, then as a

matter of law claim 19 is anticipated by those same references because there is no

reasonable dispute that all of the references disclose a "plurality" of generators as

required by claim 19.[15]  There is no genuine issue of material fact on this issue.

Accordingly, there is no reason to remand the case and start the litigation over as to

claim 19 if some error is found in the district court's grant of summary judgment.

Given the results at trial, claim 19 is invalid as anticipated as a matter of law, and

the case should at most be remanded to the district court with instructions to enter

judgment of invalidity.

## VIII. CONCLUSION

Based on the foregoing, Kohler respectfully requests that the judgments and

orders appealed from be affirmed in all respects.

-------------------

[15] On summary judgment, the district court found the plurality requirement met in
the Encorp prior art.  A72 ("The [Encorp] line diagram is not extremely detailed,
though it certainly does seem to exhibit generator sets connected to both a load and
a network (CPM).").  The Encorp documents also refer to multiple-generator
systems in numerous other places.  *See, e.g.*, A3186; A3289.  Sinha discloses
multiple generators (items 104) on the face of the patent.  A1539 (TX-1088-001).
The multiple generator aspect of the Kohler Decision Maker 340 is not only shown
in numerous documents, *see, e.g.*, A521 (TX-1284-0016); A503 (TX-1369-004),
but was even demonstrated live for the jury by Kohler's Mr. Pincus and introduced
as a physical exhibit at trial.  A11563-A11564 (TX-1442, TX-1143).

Dated:  December 9, 2013            MICHAEL BEST & FRIEDRICH LLP


                                    s/ Jonathan H. Margolies
                                    Jonathan H. Margolies
                                    Attorneys for Defendant-Appellee Kohler
                                    Company

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

Dec 9, 2013

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
    (by email or CM/ECF)

| | |
|---|---|
| Jonathan H. Margolies | /s/ Jonathan H. Margolies |
| Name of Counsel | Signature of Counsel |

Law Firm    Michael Best & Friedrich LLP

Address    100 East Wisconsin Ave, Suite 3300

City, State, ZIP    Milwaukee, WI 53202

Telephone Number    414-271-6560

FAX Number    414-277-0656

E-mail Address    jhmargolies@michaelbest.c

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)

1.      This appellee's response brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7) because it contains 11,548 words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(6) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.


Dated:  December 9, 2013.


                    s/ Jonathan H. Margolies
                Jonathan H. Margolies
                Attorneys for Defendant-Appellee Kohler
                Company